V. E. KOCH, APPELLANT, v. A. A. CLYCE ET AL., RESPONDENTS.
—92 S. W. (2d) 985.

Kansas City Court of Appeals. January 21, 1938.

*Clarence S. Palmer* and *Edwards, Thomsen & Johnson* for appellant.

*Moore & Moore* for respondents.

REYNOLDS, C.—This is a suit on a special tax bill and for the enforcement of the lien thereof for paving and other street improvements issued August 20, 1930, by the city of Excelsior Springs, a city of the third class, against Lot 11, Block 1, Beacon Hill Addition to said city, of which lot the defendants appear to be the owners.

The petition alleges that the city of Excelsior Springs is a city of the third class and sets forth the tax bill in full. It alleges that such tax bill was issued to the plaintiff as the contractor in part payment of the costs of grading, paving, curbing, draining, and otherwise improving Old Orchard and Kimball Avenues, a continuous thoroughfare from the south line of Linden Avenue to the southwest line of Dunbar Avenue in said city, and that said work was done in accordance with the provisions of ordinance No. 3366 of said city entitled "An Ordinance for Grading, Paving, Curbing, Draining and otherwise Improving Old Orchard and Kimball Avenues, a continuous Thoroughfare from the south line of Linden Avenue to the southwest line of Dunbar Avenue, approved March 24th, 1930."

It further alleges that the plaintiff is the owner of the tax bill; that such tax bill is due and unpaid; that the property described in such tax bill (Lot 11, Block 1, Beacon Hill Addition to the city of Excelsior Springs) and in the petition is charged with the lien of such tax bill; and that the defendants own or claim to own said lot or some estate or interest therein but such estate or interest that they may have therein is subject to the rights of plaintiff. The petition prays for a special judgment against the defendants for the amount

of the tax bill with interest and for the enforcement of the lien of said special tax bill against the land described, as provided by law, and for costs.

The amended answer, on which the cause was tried, is a general denial followed by specific denials of various allegations of the petition. It tenders also an affirmative defense to the effect that the work was not done in accordance with the contract and that the tax bill issued therefor and issued thereon is totally void.

The reply is a general denial, coupled with the allegation that the work of paving was in substantial compliance with the terms of the contract and was of the value of the contract price to be paid. The reply further contained a plea of estoppel against the defendants by reason of their having permitted plaintiff to proceed with the work and to expend money thereon.

Upon the trial, which was before the court without a jury (a jury having been expressly waived by entry of record), plaintiff made proof of the authenticity of the tax bill, introduced the same in evidence, and rested his case.

The defendants thereupon introduced in evidence the contract, together with the plans and specifications for the work, and introduced evidence in support of their answer, tending to show that the work as done and the improvements as made did not comply with the contract and the plans and specifications. Such evidence related largely to the condition of the pavement and its fitness for use from the time that the pavement was finished to the time of the trial, covering a period of four years and some months from the time that the pavement was constructed and thrown open for use, and to the manner in which it was laid and constructed, the preparation of the subgrade or foundation therefor, the strength and thickness of such pavement, and the character of the concrete employed therein.

The defendants' evidence tends to show that there were neither sewers nor water mains under the pavement and that, at the time of the trial which was four years and some months after it had been made and for a long time prior thereto, it presented surface indications of a noticeable cracking effect along that part south of the intersection of Old Orchard and Kimball Avenues, covering a space of about 600 feet, upon a portion of which the property described in the tax bills abutted. It was cracked in many places, extending through the curb; and there was evidence tending to show that such cracks were not ordinary expansion cracks resulting from temperatures, but were cracks resulting from faulty construction and improper subgrades and from the use of concrete at different places not of the same consistent strength. The entire pavement was more or less cracked; but the cracked condition was more noticeable at the

south end, where some 50 to 75 cracks appeared. At these cracks, one side of the pavement would be as much as one-half inch higher than the other; these cracks extended entirely through the pavement and were sufficiently large that a match or a pencil could be inserted into them; under traffic, the edges of the cracks moved up and down to a noticeable extent; some parts of the pavement had settled and at least one part had become loose; some of these cracks had been repaired with asphalt and tar filling to prevent water from seeping under the pavement and to fill in where the pavement had crumbled. At the time of the trial there were holes in the south part of the street occasioned by the concrete breaking, which had been filled with black top to take the place of the broken concrete which had been removed. At one point, when the concrete was removed, it crumbled and broke and when struck gave a dull sound. There was a noticeable, rapid deterioration of the pavement in progress, such deterioration having first manifested itself within the first year after the pavement was completed. There was also evidence tending to show that other similar pavements which were much older and carried the same traffic were in good condition and had not cracked.

Defendants' evidence tends further to show that the street had been oiled before it was paved; that, in the preparation of the subgrade for the pavement, the oily surface removed from the oiled street was used to back fill; that the pavement was of different thicknesses at many different points; that the bottoms of portions removed were in some instances rough and in other instances smooth; and that an undue amount of water had been mixed with the concrete after it had been dropped from the mixer and while it was being spread. There was evidence tending to show that the compressive strength per square inch of different portions of the pavement varied greatly. A witness, Joseph G. Hawthorne, who had much experience in testing materials going into the preparation of concrete for the use of building and paving projects, testified that he had tested 12 cores (or sections) taken from the body of the pavement—7 of which had been submitted to him by the defendants and 5 by the plaintiff—and that such cores varied in compressive strength from 3218 pounds to 6330 pounds per square inch and varied in depth and thickness from 5.44 inches to 6.35 inches; that such cores had compressive strength, 28 days after the pavement was finished, ranging from 2500 pounds to 4000 pounds per square inch; that the compressive strength of concrete of the mixture required by the contract and in the specifications, when properly mixed with the correct amount of water, should have been 3500 pounds per square inch at the end of the 28 day period. W. G. Fowler, a witness for the defendants who had had much experience in the construction of bridges on highways and of pavements approaching

such bridges and in municipal construction of pavements, testified that he had inspected the pavement in question and was present when the cores were taken from the pavement and when a corner of the pavement which had broken loose was removed; that the cores averaged a little less than six inches in length; that the variation in the thickness of the pavement as shown by the cores indicated unevenness and poor preparation of the subgrade for the pavement; that, in using oiled clods to back fill the subgrade, it is difficult to melt them back into the existing soil, even by rolling; that the cracks found in the pavement were not temperature cracks but were stress cracks, resulting from an improper subgrade; that the effect of pouring water on the concrete after it was dumped would be to wash the cement from parts of the concrete and weaken it; that the breaking of the paving at the corners indicated an unequal subgrade support; that, in his opinion—based on the appearance of the pavement, the depth and the compressive strength of the cores taken out and examined, the broken condition of the pavement at the corners, and the condition of the concrete which was removed at one corner—the failure of parts of the pavement was the result largely of a faulty subgrade, aggravated by the use of concrete which was not of the same uniform consistent strength.

The plaintiff in rebuttal introduced evidence to the effect that the pavement was properly laid and constructed in accordance with the requirements of the contract and in accordance with the plans and specifications in evidence, tending to contradict the evidence of the defendants as to the condition of the pavement from the time that it was completed to the time of the trial. This evidence was chiefly by the foreman, L. G. Womack (in charge of the construction of the street for the defendants), by W. A. Cox (subforeman for the defendants in the construction of such work), by the plaintiff himself, and by one E. E. Steele (an engineer for the city who supervised the doing of the work for the city and whose duty it was to see that the work was properly done).

E. E. Steele, the engineer, testified that he had examined the pavement eight or nine months before the trial; that he noticed some cracks in the south end of it; that the largest place he found that had settled was just a little less than three-quarters of an inch; that it did not occur to him that the cracks were caused by faulty workmanship or inferior materials; that he made no test for springing up and down of the pavement; that he saw no holes in the pavement but did see places where the pavement was patched but did not know to what depth; that one core which was rough on the bottom could have been caused by clods falling on the subgrade after it had been rolled; that the variation in the thickness of the pavement could have

been caused by many elements; that he carefully measured the amount of materials used in relation to the amount of pavement laid and that at least enough cement was always used; that the fact that the average depth of the cores was thinner than the contract called for was possibly accounted for by the fact that the cores were not taken in the right place to get thick cores.

L. C. Womack, the foreman, testified that, where back-filling was necessary, the dirt taken from the old street was used but that the oily clods were taken out before it was thrown back in the street; that there was dirt underneath the oiled matter of the old street and that this was what was used; that the concrete was carefully mixed and poured; and that no water was thrown on it after it was out of the mixer.

W. A. Cox, subforeman, testified that the work had been carefully done while he was on the job but that he was there only when the pavement on the north two or three blocks was poured.

V. E. Koch, plaintiff, testified that he had been on the work but very little when it was being done; that he had examined the pavement the year prior to the trial and was surprised to find so few cracks in it; that there were only eight cracks in the whole pavement and but three in the part south of the intersection; that he did not remember seeing any patched places; that he had had twenty-five years' experience and was familiar with the value of pavement and the cost of it and, over the objection of the defendants, was permitted to testify that, in his opinion, compared with other pavements he had laid and collected for, the pavement in question was of full value and by full value he meant the contract price; that the pavement, so far as cracking was concerned, was above the average and was the best pavement in the neighborhood; that he did not remember seeing any asphalt treatment on the pavement at all but did see one section that was higher than another by about a quarter of an inch at the center strip, as if it might have expanded and pushed up a little.

No declarations of law were asked or given.

The cause being submitted to the court for its decision and judgment, the court found the issues for the defendants and rendered judgment against the plaintiff and for the defendants, from which judgment the plaintiff, after unsuccessful motion for new trial and in arrest of judgment, prosecutes this appeal.

### OPINION.

1. Upon this appeal, the plaintiff assigns error as follows:

"I. The Court erred in rendering a judgment in favor of defendants because the same was in conflict with all the evidence in the case.

"II. The Court erred in refusing to render judgment in favor of the plaintiff for the full amount of the tax bill for the reason that defendants had not proved an affirmative defense.

"III. The Court erred in failing to find the reasonable value of the pavement.

"IV. The Court erred in rendering a judgment for defendants which in effect found the pavement was worthless, which was contrary to all the evidence in the case.

"V. The Court erred in overruling plaintiff's motion for a new trial."

2. The first and fourth assignments raise the question whether the evidence in the record supports the judgment or whether such judgment is contrary thereto and conflicts therewith, which involves a consideration by this court of the evidence and a determination of its weight and the force and effect to be given the same.

We are met, however, at the outset, with the contention of the defendants that the suit herein is one at law; that this court on appeal has no right to consider the evidence further than to determine whether there is sufficient evidence in the record to support the judgment of the trial court; and that, beyond such point, the evidence is not for our consideration.

In the case of Bates v. Comstock Realty Company, 306 Mo. 312, 267 S. W. 641, where the court had under consideration the remedy for the enforcement of a special tax bill issued pursuant to Section 5, Art. 23 of the charter of the city of St. Louis, whether it was one in equity or one at law and whether the right to trial by a jury existed, it was held (pages 327-329 thereof) that there was no constitutional requirement of a trial by jury in the foreclosure of the lien of such tax bill; that special assessments for local improvements were not debts; that no personal judgment might be rendered for their recovery; that such special tax was merely a lien against the property on which it was assessed and its payment could be enforced only through a foreclosure of the lien; that, while the charter provision in question creating the lien did not prescribe the particular method of enforcing it, it did "provide that the tax bills 'may be collected by action in any court of competent jurisdiction;' " that the action thus authorized meant "one adapted to the enforcement of the lien (Const. Co. v. Ice Rink Co., 242 Mo. 241, 259) "; that the only action competent for that purpose in the absence of a specific statutory mode of procedure was one in equity; that the proceeding thereon as to its objective was essentially one in equity and not triable to a jury. [35 C. J. 164.]

Section 6841, Revised Statutes 1929, applicable to tax bills issued by cities of the third class for street improvements, after providing for the issuance of tax bills in part payment of materials furnished and work done in making such improvements and after providing for the contents of such tax bills and for the same being a lien against the

property described therein for the amount thereof; among other things provides that such tax bills shall be assignable and that the collection thereof may be enforced by the holder thereof in any court having jurisdiction thereof. No specific method for their enforcement is prescribed by such section or other section to which our attention has been called.

The provision in said section that "the owner, or holder of any such tax bill may enforce the collection thereof by any action in any court having jurisdiction thereof" is substantially the same as the one quoted in the case of Bates v. Comstock Realty Company, supra, in the charter of the city of St. Louis; and the same rule must, therefore, be applied thereto.

It is true that, where a statute creates a specific lien and gives a specific remedy for the enforcement of such lien and provides a specific method for such enforcement, it is one to be enforced in a suit at law and not in a court of equity, especially in the absence of some specific ground of equitable interposition based on the surrounding circumstances, such as renders a remedy at law unavailable or inadequate. [Kansas City v. Field, 285 Mo. 253, 226 S. W. 27.]

However, as above noted, there is no specific remedy provided or specific method prescribed under Section 6841 relating to cities of the third class under which the tax bill in question was issued; and it must therefore be held upon the authority of Bates v. Comstock Realty Company, supra, that the suit herein is one in equity; and it follows that, upon this appeal, we are to consider the evidence fully as to the force and effect to be given it and to render such judgment thereon as in our discretion and judgment we deem proper.

3. It is contended by the plaintiff that the judgment rendered denying him any recovery on the tax bill was erroneous and unjustified under the evidence; that the only defense offered on the trial related to the quality of the work; that there was no evidence introduced on which to base a finding that the pavement was worthless and without value; that the evidence introduced at best tended to show only that the pavement was not so good as that required by the contract; that such pavement was in use at the time of the trial and had been in use for four years and over, prior thereto, and there was no evidence tending to show that it would not be serviceable for years to come; that he should have had either a judgment for the full amount of the tax bill or one for the reasonable value of the pavement or the work done.

Section 6841, Revised Statutes 1929, relating to the issuance of tax bills by cities of the third class and to actions thereon, among other things provides that, in any action brought on any tax bill issued under its provisions, the court shall have power to correct any error in

the amount of the tax bill and that, in any case where it may be shown that the work done was not as good as required by the contract, the court may give judgment for the reasonable value of the work done, chargeable against the land described in the tax bill.

It is by reason of the provisions of said section that the plaintiff now contends that (there being no evidence upon which the court might find that the pavement and the work done was worthless) the court should have found the reasonable value of such work where it was shown by the evidence that the work done was not as good as that required by the contract and should have rendered judgment therefor on the tax bill.

4. The defendants contend, however, that there was no issue as to the reasonable value of the pavement raised, either by the plaintiff's petition or their answer; that the petition is based entirely upon the tax bill as a special contract; that the defendants' answer thereto merely tendered the issue that the work was not done in accordance with the provisions of the ordinance or completed according to the contract and the pavement is not six inches thick, is of little or no value, is rotten and breaking up, and will not serve as a pavement; and that such alleged tax bill is totally void.

5. The defendants contend that, the petition being based on a special tax bill, the action is one upon a special contract; that plaintiff must recover on such tax bill as a special contract for the full amount thereof or not at all; that he can not recover thereon in full for the reason that, under the evidence, he has failed to make substantial compliance with the requirements of the contract under which it was issued; that, there being no issue as to the reasonable value of the pavement in the case under the pleadings, he is not entitled to recover the reasonable value thereof; and, further, that, if such issue were in the case, there is no evidence as to such reasonable value.

The general rule is that an action on a tax bill is subject to the legal incidents of one founded on a special contract and that the plaintiff, in order to recover thereon, must show a substantial compliance with his contract; but Section 6841, by its provisions, permits and authorizes a departure from such rule (Traders' Bank v. Payne, 31 Mo. App. 512) and allows a recovery for the reasonable value, if shown by the evidence, where the evidence fails to show substantial compliance with the contract and where it fails to show that the pavement or the work done was worthless.

The provisions of said section are broad enough not only to embrace a failure to do the work in a workmanlike manner but a failure to employ the material in kind and quantity called for in the contract and a failure to construct in the manner required by the con-

tract, such as are embraced in the defenses set up in defendants' answer. In such respects, such provisions are unlike the provisions of the statute in judgment in the case of Traders' Bank v. Payne, supra.

The defendants contend with respect to Section 6841, supra, that the court is thereby merely given jurisdiction to render a judgment for the reasonable value of the work done as upon a *quantum meruit* in a proper case and upon proper pleadings and proof and is not required in all events to exercise such jurisdiction, regardless. The authorities cited by defendants in their brief in support of this contention do not appear to be persuasive in the case at bar upon the consideration of such point when the provisions of Section 6841 are kept in mind. The statutory or charter provisions involved in those cases—after providing that, in actions upon special tax bills issued under their provisions, the tax bill shall be *prima facie* evidence of the validity of the bill and of other matters recited—provide, in effect, that nothing in such charter provisions contained shall prevent the defendant in such actions from pleading and proving such issues as those relating to a reduction in the price or proving that the work done was not done in a workmanlike manner etc.

It will be noticed that the provisions of Section 6841, with respect to the finding of the reasonable value, nowhere mentions pleadings other than the petition upon the tax bill or those by whom such issue may or shall be presented. It merely provides that, where the evidence may show that the work done is not as good as that required by the contract, the court may render judgment for its reasonable value. It is significant that no such provisions as to special pleading and proof and those by whom such pleading and proof are to be made, as are found in the charter or statutory provisions involved in the cases cited by defendants, are found in Section 6841, supra, relating to cities of the third class; but such provisions are wholly omitted therefrom. Section 6841 does not provide upon whom the burden may be to show that the work done was not as good as that required by the contract and to show the reasonable value thereof, whether upon the plaintiff or the defendant; but it seems to contemplate that evidence in support of such an issue may be introduced by either party under the petition upon the tax bill, accordingly as his interests may require, and that, where it is introduced by either side, the court must act upon it.

It is true that the statute says that "in any case where it may be shown—the court may give judgment;" but, from the use of the word "may," it does not necessarily follow that the Legislature intended merely to confer jurisdiction on the court to find that the work was not as good as that required by the contract and to find the reasonable value of the work done when such jurisdiction is invoked

upon such issue by a special pleading filed by one or the other of the parties to the suit. The intention of the Legislature with respect to the use of the word "may" is to be gathered from the entire context and the setting in which such word is found. The word "may" in a statute has frequently been construed to mean "shall" or "must", accordingly as required to effectuate the intention of the Legislature as gathered from a consideration· of the entire statute. [Lapsley v. Merchants' Bank of Jefferson City, 105 Mo. App. 98, 78 S. W. 1095.]

We are of the opinion that the purpose of Section 6841 is, in any action on a tax bill where the plaintiff by reason of his failure to make substantial· compliance with the requirements of the contract is not entitled to recover thereon the full amount thereof, to require the court, if the evidence in the case fails to show that the work done for which the tax bill was issued is not entirely worthless but merely shows that the work done is not as good as that required by the contract, to render judgment for the reasonable value of such work where such reasonable value is shown, regardless of whether such be shown by plaintiff or by defendant.

6. We have carefully examined the evidence in the record and are convinced, upon such examination, of plaintiff's failure, in important particulars, to make substantial compliance with the requirements of the contract in the doing of the work and the building of the pavement. There is no evidence, however, to show that such work was worthless or without value. At best, the evidence tends to show only that the pavement was not as good as that required by the contract; it was in use at the time of the trial and had been in use for four years. There is evidence of many defects of various kinds, traceable in the opinion of expert witnesses to faulty construction and to the use of inferior materials or of materials improperly prepared, and evidence that these defects began to manifest themselves within one year after the pavement was completed. There is evidence that the pavement is not of the uniform thickness of six inches, as required by the contract. It appears to be nearer an average of five inches in thickness. There is evidence that it is not of uniform compressive strength, resulting from the use of concrete improperly mixed and distributed. The defendants in their brief say, "It is conceded that respondents did not prove that the pavement was absolutely worthless nor a detriment but they did prove beyond a doubt that it was not worth its full value, was not as good as was required by the contract and that the contract had not been sufficiently complied with." Such, from the record, we consider to be a fair statement. Further than the statement of the plaintiff that the pavement was worth the contract price, the evidence fails to show what the value of such pavement was at the time it was completed and accepted by the city.

7. So far as we have been able to gather from the record and from the briefs, the main contentions of plaintiff in the case at bar are: (1) that the court erred in not rendering judgment for him upon the tax bill for the full amount thereof; (2) that the court erred in not rendering judgment for him on the tax bill for the reasonable value of the work done; (3) that, in rendering judgment for the defendants, the court proceeded on the theory that the work done, for which the tax bill was issued, was not worthless but only that it was not as good as that required by the contract and, not being satisfied from the direct evidence relating to the reasonable value of the work done, found for the defendants, which was equivalent to finding that the work was worthless and its action in such regard was erroneous and that, having found that the work was not worthless but only that it was not so good as that required by the contract, the court should have proceeded and found the reasonable value of such work and, if the direct evidence in the record was not sufficient to satisfy it as to such value, it should, nevertheless, have exercised its own experience and judgment with respect thereto upon all of the evidence in the case and found such value; (4) that, in rendering judgment for defendants, the court in effect found that the pavement was worthless, which finding was against all of the evidence in the case.

8. With respect to the first contention made, it is unnecessary to enter into any extended discussion thereof at this place in view of the finding heretofore made herein that plaintiff, under all of the evidence, has failed to make substantial compliance in essential particulars with the requirements of his contract and is therefore not entitled to recover on the tax bill for the full amount thereof. It may be conceded, in passing, that, upon the introduction of the tax bill in evidence, the plaintiff made *prima facie* proof of his cause of action, which entitled him to judgment upon such tax bill for the amount thereof until there was evidence by the defendants showing facts which invalidated the bill or which might defeat plaintiff's right of recovery thereon. That such is the law seems to be well settled. [Barber Asphalt Paving Co. v. Ullman, 137 Mo. 543, 38 S. W. 458.] That the defendants met such burden and overcame such *prima facie* proof and plaintiff's other evidence in support thereof by evidence showing that the work done was not so good as that required by the contract and showing that, in essential features, the plaintiff had failed to comply with the requirements of the contract fully appears from the record. Under such circumstances, the plaintiff is not entitled to judgment on his tax bill for the full amount thereof; and the court did not err in failing to render a judgment thereon in such amount.

9. With respect to plaintiff's second contention to the effect that the court erred in failing to render judgment for him for the reason-

able value of the work done, it may be said that the plaintiff, under the evidence, not being entitled to recover on his tax bill for the full amount thereof by reason of his failure to make substantial compliance with the requirements of his contract, was, nevertheless, upon a proper showing, entitled to recover for the reasonable value of the work done where it was not shown to be worthless but only shown not to be so good as that required by the contract.

There does not appear to have been any controverted issue on the trial with respect to the reasonable value of the work done.

We think, however, contrary to defendants' contentions, that there was a basis laid in the pleadings for such an issue.

The only controverted issue related to whether plaintiff had made a substantial compliance with the requirements of the contract in the work done to entitle him to a recovery in full on the tax bill. The only oral evidence upon the trial tending to show the reasonable value of the work done was the statement by the plaintiff, when a witness, in answer to a question relating to such, that it was worth the contract price. This case was tried in the court below by the plaintiff on the theory that he had substantially complied with his contract in every essential particular and that he was entitled to recover in full on his tax bill for the full amount thereof and was tried by defendants upon the theory that plaintiff had not complied with his contract in essential particulars in a substantial manner and that he was not entitled to recover thereon and that such tax bill was void and that if plaintiff was not entitled to recover in full thereon he was not entitled to recover at all. There was no controverted issue presented to the court by the evidence relating to the reasonable value of such pavement, nor was the case tried on the theory that plaintiff was entitled to a judgment for such reasonable value.

No special finding of facts was made by the trial court in rendering its judgment. It merely found the issues for the defendants and rendered judgment accordingly. Just what theory it adopted upon the facts, it is impossible to determine from the record, other than it must have found that plaintiff, by reason of his failure substantially to comply with the requirements of his contract, was not entitled to recover upon the tax bill for the full amount. That it found the work done to be worthless does not necessarily follow, especially in view of the fact that there was no evidence in the record showing it to be worthless.

The plaintiff in his brief suggests—and such suggestion may be true—that the only reasonable conclusion to be drawn from the action of the trial court in rendering its judgment is that it proceeded upon the theory that the evidence showed that the work done was not so good as that required by the contract and that, not being satis-

fied by the direct evidence in the record as to its reasonable value, it rendered judgment for the defendants; and plaintiff insists that, instead of having rendered such judgment for the defendants, it should have rendered judgment for him in full upon his tax bill. If we properly catch the drift of plaintiff's argument, it is that, the burden being on the defendants to show evidence invalidating the tax bill—such as that the work done was not as good as that required by the contract and that there had not been a substantial compliance with the contract—the burden was upon them also to show the reasonable value of the work done as it tended to reduce the amount to be recovered on the tax bill and amounted to an indirect attack on the validity of the bill and that, defendants not having met such burden, such issue as to the reasonable value was eliminated from the case and, there being no defense of that kind made out, the plaintiff was entitled to recover upon his tax bill in full.

The evidence, however, in any event precludes judgment for the plaintiff upon the tax bill for the full amount thereof, whether any issue as to the reasonable value of the work done is in the case or not, because it shows that plaintiff failed to make a substantial compliance with his contract.

It is true that the burden is upon the defendants to show facts invalidating the tax bill, such as from which it may be made to appear that the contract has not been complied with or that the work done is not so good as that required by the contract; but it does not follow therefrom that, after having met such burden and shown such facts and thereby invalidated the tax bill in whole, there is any further burden on them to proceed to re-instate a cause of action for plaintiff by showing the reasonable value of the work done. To hold so would be to hold that the burden is on them to make out a case for the plaintiff for the recovery of such reasonable value. The defendants do not by their answer seek to reduce the amount of plaintiff's recovery to a recovery for the reasonable value of the work done, but they seek thereby to invalidate the tax bill in whole and to defeat any recovery thereon. It is the plaintiff himself who asserts a right to a judgment for the reasonable value of the work done, and the burden is upon him to show such value.

10. It is finally contended by the plaintiff that the court should have exercised its common experience and judgment and have found the reasonable value of the work done, regardless of whether there was any sufficient direct evidence in the record of such reasonable value or not and that it should have deduced such value from all of the facts in evidence, including those relating to the quality and the character of the work required to be done under the contract, the contract price therefor, the quality and the character of the work

actually done, and the condition in which the pavement was shown to be when completed and thereafter as to soundness and durability and as to defects therein and as to its fitness for use and service—in other words, that it should have deduced such reasonable value from the whole situation as shown by the evidence, together with the direct evidence as to such reasonable value given by the plaintiff.

If the evidence in the record was such (whether direct or circumstantial) that the court might have found therefrom such reasonable value thereof, it was the duty of the court to exercise its common experience and judgment and to determine the weight thereof and to form a judgment with respect thereto. That there was such evidence, we think is shown upon an examination of the record. The court had the contract before it with the quality and the character of the work required to be performed thereunder and the agreed price as to its value when so performed. It likewise had the direct evidence, for whatever it may have been worth, of the plaintiff to the effect that the value of the work done was equal to that of the contract price. This evidence is assailed as being a mere conclusion and a mere opinion. Such is true as to most evidence relating to values, by whomever given. What weight is to be given such opinion depends on the experience and the qualification of the witness giving the opinion. The court had before it evidence of the quality and character of the work actually done and the conditions in which the street was when completed and thereafter until the time of the trial as to soundness and durability, of the defects therein and its fitness for use and service. It had the evidence before it that, although the pavement was not equal to that required by the contract, it, nevertheless, had value and was serviceable and was being used every day for travel and general traffic as a highway and that it had been so used for four years and over; and it had no evidence to show that it could not be used and would not prove serviceable in the condition in which it was for some years to come. It could have drawn deductions as to its value from the conditions in which such pavement was shown by the evidence to be when completed compared to what its value would have been had it been constructed in accordance with the requirements of the contract.

Plaintiff's contention in this regard seems to be sound. It is our opinion that the court should, upon the record, have exercised its judgment and determined the reasonable value of the pavement from the evidence and that, in failing to do so, it committed error.

11. Moreover, the evidence in the record tends to show that the work done had a reasonable value. There is no evidence tending to show that it was or is worthless. The defendants conceded that it was not shown to be worthless but only to be not so good as that re-

quired by the contract. It is apparent that, if the judgment of the court below be permitted to stand, it will result in the defendants' getting valuable improvements upon the street in front of their property for nothing and wholly at plaintiff's expense. The plaintiff by such judgment is not afforded that adequate relief to which he is entitled, and the defendants obtain an advantage to which they are not entitled. In the rendition of a judgment in a suit on a tax bill where the circumstances developed are such as shown by the evidence in this case, it is within the contemplation of Section 6841 that equitable principles be applied.

In the case of Quest v. Johnson, 58 Mo. App. 54, 1. c. 60, this court, in an action to cancel tax bills issued for street improvements, had under consideration charter provisions similar to the provisions of Section 6841, just noted, and said with regard to the purpose of such provisions: "We think it was the manifest purpose of the charter amendment of 1889 to bring work of this kind, and the rights of the parties interested therein, within reach of the just and equitable rule so often applied to other building contracts— that is, that although the work has not been done with material of the quality provided for in the contract, yet the contractor will be permitted to recover what such work is reasonably worth to the owner, not exceeding the contract price."

The defendants should not be permitted to reap the benefits of a valuable improvement at the expense of the plaintiff without paying the plaintiff the reasonable value of such improvement, although such improvement be not such as it should have been under the contract authorizing it, nor is it within the contemplation of Section 6841, supra, that they should do so. The provisions of Section 6841, equitable in nature, should be given effect.

The evidence develops that plaintiff, although not entitled to recover on his tax bill for the full amount thereof, was entitled to recover for the reasonable value of the work done; and the effect of the judgment of the trial court is such as to deny him any recovery therefor. That this might have resulted from a trial on the wrong theory by reason of which such relief could not be afforded plaintiff appears to be immaterial. Equity requires that the judgment of the trial court be reversed and the cause remanded for a new trial so that the case may be tried and disposed of in a manner by which such relief, if plaintiff upon such retrial shows himself entitled thereto, may be awarded him. [Mann v. Bank of Greenfield, 323 Mo. 1000-1011, 20 S. W. (2d) 502.] Upon such retrial, however, the evidence stated herein is not to be taken as true; but the issues are to be tried anew upon the evidence adduced.

The judgment of the trial court is accordingly reversed, and the cause is remanded for new trial. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed, and the cause is remanded for new trial. *Shain, P. J.,* and *Bland, J.,* concur.